(23 App. Div. 601.)

DAY et al. v. WEBSTER et al.

(Supreme Court, Appellate Division, First Department. December 31, 1897.)

1. TRADE LABELS—UNFAIR COMPETITION—FRAUD.

In an action for an injunction, based, not upon infringement of a trademark, but on the theory of unfair competition, fraud is the essence of the claim.

2. SAME—INJUNCTION.

Where, in an action to restrain the use by defendant of a certain label, the plaintiff introduces no evidence except the respective labels, and experienced witnesses for defendant testify to the long-continued use of defendant's label on the market, and that they never heard of any one being deceived by it, no injunction can be granted, unless the labels, considered in the light in which they would appear to an ordinary buyer, making his purchases under the ordinary conditions prevailing in the conduct of the particular traffic in question, are so similar as to make out a fraudulent intention on defendant's part to palm off its goods as those of the plaintiff.

Appeal from special term, New York county.

Action by Eva W. Day and others against Charles B. Webster and others. From an interlocutory judgment, defendants appeal. Reversed.

The following are the exhibits of plaintiffs:

Plaintiffs' Exhibit A.

Plaintiffs' Exhibit B.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Delos McCurdy, for appellants.
E. H. Moeran (Wm. J. Leitch, of counsel), for respondents.

BARRETT, J.    There is no question in this case of the infringe-ment of a technical trade-mark.    No claim upon that head, apart from their entire label, is made by the plaintiffs in their complaint; and, upon the trial, in answer to a query of the learned judge, the plaintiffs' counsel conceded that there was no question of trade-mark. The plaintiffs' label was treated as the equivalent of their trade-mark. They speak throughout of their adoption, not of any defined name or device, but of "a special, particular, and distinctive label, device, and trade-mark," a fac-simile of which is appended to their complaint. That fac-simile is their entire label, as applied to every bottle of ale put up and sold by them.    What they claim, therefore, is, in sub-stance, unfair competition; that is, that the defendants are fraudu-lently attempting to pass off their goods as the goods of the plain-tiffs.    The question, thus, is, have the plaintiffs proved this charge of fraud?

In the case of a technical trade-mark, to which the plaintiff shows a property right, fraud is not the essence of the claim.    That prop-erty right may be infringed unintentionally, as well as fraudulently, and the innocent infringement will be restrained, irrespective of the question of intention.    Not so, however, where the question is solely one of unfair competition.    There fraud is the essence of the claim. It is true that the similarity of the wrongdoer's label may be so great that fraud will be inferred from a mere inspection of the respective labels.    Where, however, the similarity is not so great as, upon a mere inspection, to warrant the conclusion of fraud, resort may be, and usually is, had to evidence aliunde.    In the case at bar, the plaintiffs rested upon the introduction of the respective labels.    They offered no scintilla of evidence tending otherwise to show a fraudulent inten-tion.    On the other hand, the defendants gave evidence, which is not in any manner rebutted, to the effect that London Club ale had been openly sold by them under the label now complained of for some 4 years, without objection or interference; also, that this ale, thus labeled, had been on the market for upward of 6 years; that it had been listed on their catalogues as "London Club Ale," and billed and sold under that name; that they never knew of any instance, and never heard of any, in which their ale or their label was mistaken for the plaintiffs'.    All this evidence was fortified by that of an inde-pendent witness, himself an importer of wines and liquors, who testi-fied that he had known the London Club Ale and its label for some 10 or 12 years; that he never heard of any one mistaking that ale for the plaintiffs'; that the difference between the two is perfectly plain and clear; that the London Club ale is a brand of ale prominently known among dealers, and is, and has been for years, listed and sold by deal-ers for London Club ale.    We are, therefore, called upon to determine whether the similarity of the two labels is so great that, without ad-

ditional proof on the part of the plaintiffs, and against this positive and undisputed testimony furnished by the defendants, a fraudulent intention upon the latter's part to palm off their ale as that of the plaintiffs is made out. No actual deception has been shown; quite the contrary, as we have seen. Is, then, the probability of deception so great as to warrant the presumption of fraud?

We think but one answer can be given to this question, and that it must be in the negative. It is difficult to see, upon an inspection of these labels, how even the most unwary purchaser could be deceived. The prominent feature of the plaintiffs' label is "Bass & Co.'s Pale Ale." In the circle which forms the center of a device founded upon the British arms, we find printed in red letters the words, "Bottled by Thomas McMullen, 44 Beaver St., New York." As if to draw the eye to these words in red letters, the signature "Thomas McMullen & Co." appears, apparently written, across the circle in deep, black ink. At the top of the label are the words "Trade-Mark" in red letters; at the bottom, the words "White Label," also in red letters. Beneath the device of the British arms appears the signature "Bass & Co.," also seemingly written, followed by the printed words "Burton on Trent, England." Underneath the latter words a "caution" is subjoined, in red letters, as follows: "To prevent deception, observe fac-simile of signature on label and cork." Upon the neck of the bottle is a small label, with the words "White Label" printed on it, followed by the written words "Thomas McMullen." Let us now look at the defendants' label. Its most striking feature is "London Club Ale." These words are prominently printed in even larger letters than the words "Bass & Co.'s Pale Ale" upon the plaintiffs' label. In the center of the circle, which in a measure corresponds with that upon the plaintiffs' label, the words "Wells Bros., London," appear in printed letters, together with a triangular shaped device in red. Not a word here as to the bottling of the ale. No signature of Wells Bros. across the circle in contrasted ink. No signature, in fact, at all. No signature beneath Wells Bros., or of any one. Instead of the plaintiffs' "caution," we find a few words as to the proper manner of keeping the ale in good condition. The words at the top and bottom of the plaintiffs' label are conspicuously absent, while the small label on the neck of the defendants' bottle reads "London Club. Wells Bros." The suggestions of similarity are the use of the British arms device, the word "Extra" in red letters after the words "London Club Ale," and the appearance beneath the British arms device of the words, "From Burton on Trent, England." As to the British arms device, there is no attempt to photograph the plaintiffs' design. On the contrary, the defendants' design varies materially from that of the plaintiffs. There is, in this particular, nothing more than the application, in a modified form, of something which is in general use. The word "Extra" has surely no possible significance. As to the remaining point of alleged similarity, we need only say that the defendants were certainly not called upon to defend themselves from the mere insinuation—for that is all there is of it, in the absence of averment or proof—that their ale was not manufactured at, and did not come from, Burton on Trent, England. The defendants' label, we may

add, is white, and it is shaped in a somewhat similar manner to the plaintiffs'.

These details, however, are trivial, and entirely insufficient, in view of the marked evidences of dissimilarity in crucial matters, to warrant such a finding as was essential to entitle the plaintiffs to the relief they asked. The rule, where the case is one of unfair and dishonest competition, and not of trade-mark proper, is well stated in Fischer v. Blank, 138 N. Y. 252, 33 N. E. 1040. The true rule, as was said by the court of appeals in that case, "is whether the resemblance is such that it is calculated to deceive, and does in fact deceive, the ordinary buyer, making his purchases under the ordinary conditions which prevail in the conduct of the particular traffic to which the controversy relates." The learned trial judge observed, in the course of the trial now under review, after an inspection of the two labels, that he saw no resemblance at all between them; yet, in his written opinion he says he is unable to distinguish the case at bar from Fischer v. Blank, supra. It is apparent that the judgment which he expressed upon the trial was subsequently changed by what he supposed to have been held in the case cited. We think the learned judge must have overlooked the fact that in Fischer v. Blank there was abundant proof, not only that the defendant's labels were calculated to deceive, but that they did in fact deceive, many purchasers. This latter fact was adverted to and emphasized in the court of appeals, as well as at the general term. In the case at bar, however, such evidence is completely wanting, and consequently we have no guide save the labels, standing alone. Now, as these labels stand alone, they must be considered, as the court of appeals said, in the light in which they would appear to an ordinary buyer, making his purchases under the ordinary conditions which prevail in the conduct of the particular traffic in question. What, then, would an ordinary purchaser of "Bass & Co.'s Pale Ale" look for? And what would naturally and primarily strike his eye? Clearly, the name. As was said in Blackwell v. Crabb, 36 Law J. Ch. 504, where the case of infringement is to be decided merely by an inspection of the two labels, and it is difficult to say where the imitation begins, the "important question is, what is the customer likely to look at?" In this case, said the court, the "name is the thing which a purchaser would look at, and that is conspicuously different." This doctrine is applicable here. These plaintiffs are selling their "Bass & Co.'s Pale Ale," with a label which emphasizes that fact. The defendants are selling their "Wells Bros.' London Club Ale," with a label which, with equal, if not greater, prominence, brings their trade-name and characterized ale directly before the eye. The name, however, is here but a single point of dissimilarity. There are, as we have seen, many others. Points of dissimilarity, in fact, abound. The more we look at these labels, the less we see of similarity. If, however, our view of the marked dissimilarity in these labels be too strong, still the question whether, upon the whole, the defendants' label is calculated to deceive the ordinary buyer of "Bass & Co.'s Pale Ale" is, to say the least, sufficiently doubtful to call for further proof before convicting reputable merchants of intentional fraud.

We think, therefore, that the judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event.    All concur.