having been offered to show that the value of the enjoyment varied in the different months of the year. The plaintiff is therefore entitled to judgment for $608.50, and interest.

(29 Misc. Rep. 99.)

### BOLEN & BYRNE MFG. CO. v. JONASCH et al.

(Supreme Court, Special Term, New York County. October, 1899.)

TRADE-MARK—SIMULATION—INJUNCTION.

> Defendants had been employed by plaintiff, a manufacturing company established for many years, and, shortly after leaving its service, engaged in a similar business; adopting a trade-mark which was so palpable a simulation of the label plaintiff used on its products that it would be likely to deceive consumers. *Held* that, without explanation, a fraudulent intent would be presumed, and injunction pendente lite should issue against defendants.

Action by the Bolen & Byrne Manufacturing Company against Rudolph Jonasch and others. Plaintiff moved for an injunction pendente lite. Motion granted.

F. V. Dobbin, for the motion.

E. Zabriskie, opposed.

GILDERSLEEVE, J. This is a suit in equity to restrain the defendants from using a simulation of the plaintiff's labels. The complaint charges the defendants with an unlawful appropriation of the plaintiff's labels and trade-marks, and with unfair competition in trade. The plaintiff and its predecessors, to whose rights the plaintiff has succeeded, have carried on the business of making and selling ginger ale, sarsaparilla, and lemon soda in the city of New York for upwards of 30 years, and have during part of that time used the labels which the defendants are charged with imitating. In 1873, 1876, and 1878 the Vienna, Paris, and Centennial Expositions, respectively, made to the plaintiff, or to its predecessors in business, awards for the excellence of their goods. Prior to March last the defendants were all employed by the plaintiff or its predecessors, in various capacities, for periods ranging from 13 to 30 years. Shortly before April last, the defendants, apparently by common consent, all left the employment of the plaintiff, and a few weeks afterwards united in the business of manufacturing goods of the same kind as those made by the plaintiff. In putting their goods upon the market the defendants adopted labels for their goods which the plaintiff alleges are imitations of its labels. A general comparison of the labels used by the defendants with those of the plaintiff discloses a marked resemblance between them, and this impression is confirmed by a minute inspection of the details of size, form, type, color, and ornamentation. There are the same clipped edges at the top and bottom, the same pointed ends on either side, and the same serrated border. The yellow-colored center in the label used by the defendants for lemon soda is of exactly the same shade as that in plaintiff's label for that article. For ginger ale and sarsaparilla the defendants have adopted for the center of their label green and red of a shade

only slightly different from those colors in the plaintiff's label for the same articles, but the difference in shade is not sufficient to make a contrast between the two which is at all noticeable. The words "Ginger Ale" are printed in type precisely alike in every respect in both plaintiff's and defendants' labels for that drink. In the case of lemon soda and sarsaparilla, the type is not the same in both labels, but very similar; the difference being so slight as not likely to arrest the attention of a casual observer. In both sets of labels the surface of the type used to designate the article in the bottle is white. The figures which represent the medals received by the plaintiff from the Vienna, Paris, and Centennial Expositions ornament the right and left ends of its labels, and the same figures appear upon the defendants' labels in the same position. In this respect there is no difference whatever between the plaintiff's and the defendants' labels. The resemblances which I have pointed out are so manifest as to lead the mind irresistibly to the conclusion that they are the result, not of chance, but of deliberate intention. The almost simultaneous departure of the defendants from the plaintiff's employment after their long service in the plaintiff's business, the immediate establishment of their present business, and the adoption by them of the labels in question, are pregnant circumstances, and significant of a preconcerted design to appropriate the plaintiff's trade-mark. They may have been ignorant of the plaintiff's rights, and may have been intended only to adopt labels which they admired and approved. But this does not excuse them in the judgment of the law; for where the simulation of a trade-mark of another is palpable, as it is here, the law deems the act as in itself evidence of a fraudulent intent. Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904; Day v. Webster, 23 App. Div. 601, 49 N. Y. Supp. 314. Another circumstance which points directly to a deliberate design on the part of the defendants to appropriate the plaintiff's labels is that they embellished their labels with pictures of medals purporting upon their face to have been issued, presumably to them, by the Vienna, Paris, and Centennial Expositions, whereas those expositions came to an end and their functions ceased upwards of 20 years ago, and the defendants' present business is not yet 6 months old. This was something more than a mere thoughtless anachronism. The same medals are pictured in the plaintiff's labels, and in position and form are the exact originals of the defendants' labels. This feature of the plaintiff's labels was plainly adopted by the defendants with the view of recommending their goods to the public as having secured the approval of the expositions in question. It is doubtless true that no one can claim an exclusive right to the use of any particular color, and the same is true of form and type; but, when the question of likeness or difference is presented in a case like this, color, form, and type all enter into the consideration and determination of the question. It is argued that the likeness between these two sets of labels is not sufficient to mislead purchasers using ordinary caution, and several affidavits of dealers in the articles made by both parties to the action were read in support of that position. As remarked by a sagacious judge in a similar case:

"The defendants present the usual voluminous bundle of affidavits by persons in the trade to the effect that, in their opinion, no one is likely to mistake defendants' biscuit for complainant's. * * * It makes no difference that dealers in the article are not deceived. No one expects that they will be. It is the probable experience of the consumer that the court considers." Lacombe, J., in Biscuit Co. v. Baker (C. C.) 95 Fed. 135.

The defendants deny any deliberate purpose to imitate the plaintiff's labels, but that is so commonly done, even in the plainest of trade-mark cases, as to occasion no surprise. Where the evidence points so conclusively as it does here to an intentional appropriation of the trade-mark of another, the party accused is bound to go beyond a mere formal denial, and make a complete disclosure of all the circumstances attending the selection of the trade-mark which he is charged with imitating. Without imputing to the defendants any purpose to deny the plaintiff's charges at any and all hazards, the internal evidence of design furnished by their labels is so strong that to ask the court to believe them entirely innocent would unreasonably tax human credulity. Assuming that there is such a thing as chance, it is seldom found as an element in the adoption of a trade-mark, especially one which another person has found useful in his business. The choice of a label as a means of identifying an article of commerce and promoting its sale is one of those things into which taste, judgment, and expediency all enter and combine to secure something which will attract custom. And when, as now, all the resources of invention and art are at the command of any business man who wishes something pleasing in a label for his goods, he can have no excuse for helping himself to his neighbor's trade-mark. The courts will give to every man a fair chance in the battle of life, but, in their present temper, they steadily frown upon every attempt to take an unfair advantage of another engaged in the same struggle. Motion granted, with costs. An injunction may issue restraining the defendants from using the three labels now used by them, samples of which constitute Exhibit B, attached to the complaint.

Motion granted, with costs.