WESTCOTT CHUCK CO. v. ONEIDA NATIONAL CHUCK CO.

(Supreme Court, Appellate Division, Third Department. · November 13, 1907.)

1. PROPERTY—INVENTION—RIGHT OF INVENTOR.
    Independent of letters patent, an inventor has by the common law an exclusive property in his invention until, by publication, it becomes the property of the general public.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Property, § 2.]

2. TRADE-MARKS AND TRADE-NAMES—RIGHT TO PROTECTION.
    Irrespective of any question of a right protected by a patent, a party may not always appropriate to his own use in his business a label in prior use particularly appropriated by another where such act deceives the ordinary buyer.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 64.]

3. PATENTS—IMITATION OF ARTICLE AFTER EXPIRATION OF PATENT—EFFECT.
    One may imitate a perfected article of another already on the market where the patents thereof have expired so that the latter has no longer an exclusive property therein.

4. TRADE-MARKS AND TRADE-NAMES—INFRINGEMENT—DAMAGES—EVIDENCE.
    Plaintiff and its predecessor in business had manufactured for about 30 years drill chucks of two types, known as "Little Giant Improved" and "Little Giant Double Grip." To designate the various sizes, letters and numbers were used. After the expiration of the patents, defendant procured some of the chucks and proceeded to duplicate them, and placed

thereon the year of manufacture, its own name, and the numerals used by plaintiff. Defendant adopted the advertising matter of plaintiff. *Held*, that plaintiff was not entitled to damages on the ground that defendant deceived the public into believing that the article sold by it was the article of plaintiff, without proof that such deception occurred, and evidence that defendant undersold plaintiff was not sufficient.

Chester and Sewell, JJ., dissenting.

Appeal from Special Term, Madison County.

Action by the Westcott Chuck Company against the Oneida National Chuck Company. From a judgment for plaintiff awarding damages and an injunction, defendant appeals and brings up for review so much of an order as granted or continued a temporary injunction, and the interlocutory judgment as modified, and the order referring the cause to assess damages, and an order approving the form of the final judgment. Reversed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

T. A. Devereaux, for appellant.
Risley & Love, for respondent.

COCHRANE, J.  Plaintiff has recovered an interlocutory judgment which restrains the defendant as follows, viz.:

"From the manufacture and sale of the two types of drill chucks known as 'Exhibits 3A to 8A,' inclusive, and 'Exhibits 15B, 16B, 17B, 19B and 20B,' in the manner and form and as stamped by the defendant according to the evidence in the case and from advertising the said two types of drill chucks in the manner and form herein stated in this case. The injunction is not to be construed as preventing the defendant from manufacturing and selling the said two types of drill chucks according to the mechanical device and in the form and shape in which they were manufactured prior to the expiration of the patents, nor in the use of its name, but they are to so manufacture, stamp, and advertise said products to the public so that the public and intending purchasers will not be deceived into believing that the defendant company, located at Oneida, N. Y., is the plaintiff company, and so that they will not be deceived into believing that the products offered for sale by the defendant company are the products of the plaintiff company."

Such interlocutory judgment also provides as follows:

"It is adjudged and decreed that each and every of the acts committed by the defendant as herein specified, as well as those disclosed in the evidence, * * * were carried on and conducted for the purpose and with the intent on the part of the defendant of carrying on and conducting an unfair and unlawful competition with the plaintiff the effect of which has been and if continued will injure the plaintiff's trade and business and is a fraud upon the public and the plaintiff."

And also:

"That the Westcott Chuck Company recover from the defendant, the Oneida National Chuck Company, the damages occasioned by the various wrongful acts herein decreed and that a referee be appointed by the Supreme Court on notice to the defendant to take and state and assess the damages sustained by the plaintiff on account of the various wrongful acts herein referred to."

An inspection of the interlocutory judgment discloses that some of the "acts committed by the defendant" as therein specified are harmless and lawful; and it is scarcely necessary to observe that many of

such acts "disclosed in the evidence" are clearly beyond criticism, and are not within the prohibition of the injunctive portion of said judgment, nevertheless they indiscriminately fall within the condemnation of said judgment as being "unfair," "unlawful," "a fraud upon the public and the plaintiff," and they are all by the express mandate of the said judgment made to constitute the basis of the damages which the plaintiff has sustained; and on the strength of such interlocutory judgment the referee appointed as thereby provided has awarded to the plaintiff for such damages the sum of $11,925.52, and plaintiff has recovered against the defendant a final judgment for that amount. As may be inferred from the portions of the interlocutory judgment above quoted, the purpose of the action is to prevent alleged unfair and fraudulent competition on the part of the defendant in the manufacture and sale of drill chucks. In approaching the consideration of the facts herein it is well to keep in mind as pertinent thereto certain distinguishing principles as declared by the courts.

In Tabor v. Hoffman, 118 N. Y. 30, 23 N. E. 12, 16 Am. St. Rep. 740, Judge Vann said:

"It is conceded by the appellant that, independent of copyright or letters patent, an inventor or author has, by the common law, an exclusive property in his invention or composition until by publication it becomes the property of the general public. This concession seems to be well founded and to be sustained by authority. Palmer v. De Witt, 47 N. Y. 532, 7 Am. Rep. 480; Potter v. McPherson, 21 Hun, 559; Hammer v. Barnes, 26 How. Prac. 174; Kiernan v. M. Q. Tel. Co., 50 How. Prac. 194; Woolsey v. Judd, 4 Duer, 379; Peabody v. Norfolk, 98 Mass. 452, 96 Am. Dec. 664; Salomon v. Hertz, 40 N. J. Eq. 400, 2 Atl. 379; Phillips on Patents, 333–341; Drone on Copyright, 97–139. As the plaintiff had placed the perfected pump upon the market without obtaining the protection of the patent laws, he thereby published that invention to the world, and no longer had any exclusive property therein. Rees v. Peltzer, 75 Ill. 475; Clemens v. Belford (C. C.) 14 Fed. 728; Short's Laws of Literature, 48."

There is, however, another principle equally well established by modern decisions, that, irrespective of any question of a right protected by patent, a party may not always appropriate to his own use in his business a label or word or device in prior use and especially or particularly appropriated by another. The distinction is indicated in Cooke & Cobb Company v. Miller, 169 N. Y. 475, 62 N. E. 582, as follows:

"In the absence of some restriction upon the defendants arising out of the patent law, as to which the record is silent and as to which the state courts have no jurisdiction, the defendants had the right to manufacture and sell the article in question, although it was similar in general appearance and made from the same material and upon the same plan as the article made and sold by the plaintiff. This proposition is not questioned, but what the plaintiff claims is that the defendants have wrongfully appropriated for use in their business a label or device which belonged to the plaintiff as its trademark, and so have invaded its property rights."

The same distinction is recognized in Fischer v. Blank, 138 N. Y. 244, 252, 33 N. E. 1040, 1041, where it is said:

"The true test, we think, is whether the resemblance is such that it is calculated to deceive, and does, in fact, deceive, the ordinary buyer making his purchases under the ordinary conditions which prevail in the conduct of the particular traffic to which the controversy relates. Franks v. Weaver, 10

Beav. 297; Amoskeag Man. Co. v. Spear, 2 Sandf. Ch. 599; Colman v. Crump, 70 N. Y. 573; McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Lawrence Man. Co. v. Tenn. Man. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997. No inflexible rule can be laid down. Each case must in a measure be a law unto itself."

See, also, to the same effect, Day v. Webster, 23 App. Div. 604, 49 N. Y. Supp. 314; T. B. Dun Company v. Trix Manufacturing Company, 50 App. Div. 78, 63 N. Y. Supp. 333.

Let us now consider the facts constituting the grounds of plaintiff's alleged grievance. For about 30 years plaintiff and its predecessor in business have been manufacturing drill chucks in the city of Oneida. These chucks included two general types known as "Little Giant Improved" and "Little Giant Double Grip," and each type in different sizes. To designate the various sizes, letters and numerals were used. Chucks as thus constructed were stamped thereon with these numerals indicating their sizes, with the words "Little Giant Improved" or "Little Giant Double Grip," as the case might be, with plaintiff's corporate name and place of business, with the date of the year of manufacture, and with the words "keep well oiled." Certain methods and devices connected with these chucks were protected by patents which expired in the years 1902 and 1903. The defendant, on the other hand, and its predecessor in business, have been constructing drill chucks for about 10 years in the city of Oneida. It has therefore been during that period a natural competitor of the plaintiff. After the expiration of plaintiff's said patents, defendant procured some of plaintiff's chucks in the market, took them apart, and proceeded to duplicate them in the chucks which it manufactured and sold. It did not, however, stamp thereon the plaintiff's name or the names of plaintiff's types "Little Giant Improved" and "Little Giant Double Grip," but it placed thereon the date of the year of manufacture, the words "keep well oiled," the same numerals as used by plaintiff to indicate the different sizes, and its own corporate name.

Referring now in the light of these facts to the injunctive provisions of the interlocutory judgment above quoted, it is difficult to determine just what defendant is permitted to do and what it is commanded to refrain from doing. It may be urged with much plausibility that the injunction is too vague and indefinite, and should not for that reason be sustained. By the very terms of the injunction, resort must be had "to the evidence in the case," and not necessarily to anything found or determined therein in order to ascertain just what the defendant may or may not do. It is very clear, however, that the defendant is permitted to manufacture and sell "the said two types of drill chucks according to the mechanical device and in the form and shape in which they were manufactured prior to the expiration of the patents." In other words, the defendant is at liberty to imitate and use the products of the plaintiff precisely as they have been manufactured by the plaintiff in all of their details, save only as to the stamping and advertising of the same. And that the defendant has such right I think is very clear from the authorities above cited and many others. No secret method or formula has been purloined or patterns or forms surreptitiously or by underhanded methods acquired by the defendant, as was the case in Tabor v. Hoffman, 118

N. Y. 30, 23 N. E. 12, 16 Am. St. Rep. 740. But the defendant copied and imitated the perfected articles of the plaintiff which were already upon the market, and in which, the patents thereon having expired, the plaintiff no longer had any exclusive property. As was said by the court in that case:

"If a valuable medicine, not protected by patent, is put upon the market, any one may, if he can by chemical analysis and a series of experiments, or by any other use of the medicine itself aided by his own resources only, discover the ingredients and their proportions. If he thus finds out the secret of the proprietor, he may use it to any extent that he desires without danger of interference by the courts."

That is all the defendant has done in this case, save only as the question of stamping its products is concerned. It is true it employed some of plaintiff's prior employés who had acquired a knowledge of its business, but it does not appear that defendant derived any benefit or advantage from such knowledge on their part, save such as might have been derived from any competent mechanic, nor does the referee so find.

As to the method of stamping, it is somewhat difficult to see how with the plaintiff's name stamped upon its product and the defendant's name stamped upon the product sold by it any confusion as to the source or origin of the respective products could arise in the mind of any purchaser who cared to inform himself as to that question. These chucks are used almost exclusively by machinists, who have technical knowledge and who look to the construction of the chuck, rather than to its form or any particular marks thereupon. Such customers are much less likely to be misled by form than in ordinary cases where articles are purchased by those who buy for no mechanical purpose or who have no special knowledge to enable them to discriminate between articles made by different makers. Much stress is laid on the fact that the defendant adopted some of the advertising material of plaintiff. As a matter of business ethics, such methods should be condemned. But all of this literature, in order to be effective, must necessarily have been sent out over the defendant's signature, or in such a manner as to make it clearly appear to anyone who took the trouble to peruse it, that it was the defendant, and not the plaintiff who was thus advertising its wares. If the defendant misrepresented the quality of its wares, its liability is to the purchaser who was thereby defrauded. But no redress on that ground exists in favor of this plaintiff. As to the latter, the utmost inquiry is merely whether or not defendant by any improper method has deceived or rendered it possible to deceive a purchaser into believing that the article sold by the defendant was the article of the plaintiff. It may be that, if this injunction merely specifically and definitely restrained the defendant from using the size numbers previously adopted by the plaintiff and possibly some other features in the method of its stamping and advertising, we should not interfere therewith. But there is nothing specifically commanded or enjoined, and the defendant and every one else is left to conjecture in respect to the matters within the spirit and scope of the prohibition. And, while, as stated, the defendant might perhaps be enjoined as to

some of its methods used in stamping and advertising its products, this molehill has been magnified into a mountain and made the pretext for a considerable judgment for damages against the defendant.

On the question as to whether plaintiff is entitled to an injunction, it may be that it makes out a case when it shows that the defendant by some unfair method has constructed its goods so that they are calculated or liable to deceive or beguile some purchaser thereof be he wholesale or retail dealer or ultimate purchaser into the belief that he is purchasing plaintiff's goods and without showing that such deception has actually occurred. But I cannot think that plaintiff may recover a judgment for damages without proof that some such deception has in fact occurred. There should be little difficulty in finding some purchaser of these thousands of chucks which are claimed to have been improperly sold by defendant who believed when he made his purchase that he was buying plaintiff's article. This voluminous record fails to disclose any evidence, however slight, to the effect that any purchaser was ever deceived or misled into buying the defendant's product as and for that of the plaintiff. In fact, the evidence expressly negatives any such idea. Mr. Goodwin, the plaintiff's president and manager, visited many of its customers in various cities, and found among such customers the defendant's chucks. But he in no instance furnishes us with the slightest intimation that any one was deceived. He testified as follows:

"The objection that one or some of these buyers made to giving me an additional order at that time was the price. They could buy others cheaper, the chucks made by the Oneida National Chuck Company. The buyers said that defendant was making that line of chucks and selling them for lower prices than ours. I don't recall any other objection as having been made, except that of price. In other words, the objection that was made by these persons that I have stated this morning that were customers of ours in 1902, the objection that each made when they declined to give me further orders for drill chucks, was, in substance, that the Oneida National Chuck Company was furnishing that line of chucks at lower prices than we were quoting. That was the general objection."

It clearly appears from the foregoing testimony of Mr. Goodwin that plaintiff's customers were under no delusion or misapprehension as to the manufacturer of the chucks. Plaintiff's real grievance is not that purchasers have been deceived as to the origin or manufacture of the chucks, but that defendant has undersold the plaintiff in the market. Very naturally and properly, when the patents expired, plaintiff had to compete with other manufacturers in respect to its privileges and rights formerly protected by such patents. The natural effect was to reduce the price. If the defendant accomplished such a result without unfair means, it did not thereby defraud the public, but became a public benefactor. Reference has already been made to the effect that the interlocutory judgment decrees that every act committed by the defendant as therein specified as well as those disclosed in the evidence was unfair, unlawful, or fraudulent, and that the plaintiff recover of the defendant the damages occasioned by all of such acts. Among such acts thus adjudged to have been "unfair," "unlawful," and "fraudulent" were that defendant "sold to the plaintiff's customers on more favorable terms of discount than those

which the plaintiff company had previously given to its customers";
also, the manufacture and sale by defendant of ordinary farm imple-
ments, drill, and lathe chucks and tools of all kinds. The wonder is
that under such provisions in the interlocutory judgment the damages
are so small. There are a dozen other manufacturers of chucks some
in open competition with plaintiff. All of this competition including
that of the defendant naturally reduced the market price after the
expiration of the patents and all of the depreciation in plaintiff's busi-
ness which could be traced to any of defendant's competition lawful
or unlawful has been indiscriminately charged up to it on proof ques-
tionable in its most favorable aspect that some possible person at some
possible time and at some possible place might have bought defend-
ant's goods under the mistaken belief created by some possible de-
ception or fraud not clearly pointed out or designated that he was
buying the goods of plaintiff, but without the slightest evidence that
such an instance ever in fact occurred.

The effect of these judgments in my opinion is largely to stifle
legitimate and healthy competition, and, for the reasons heretofore.
stated, I favor a reversal of both judgments on the law and facts.

Final and interlocutory judgments reversed on the law and facts,
referees discharged, and new trial granted, with costs to appellant
to abide event.


SMITH, P. J., and KELLOGG, J., concur.


CHESTER, J. (dissenting). The action is in equity, and was
brought to obtain an injunction restraining the defendant from selling
certain drill chucks like or in imitation of those made by the plaintiff,
and for an accounting and to recover such damages as the plaintiff had
sustained by the alleged unfair trade methods of the defendant.

The plaintiff and its immediate predecessor in business had been
engaged in the manufacture and selling of drill chucks for a period of
about 30 years at Oneida, N. Y., and had made such changes and im-
provements in them as its experience prompted and found a market
for its chucks throughout the entire world. It operated under several
patents upon various improvements upon these chucks. The defend-
ant had been engaged for some time in the same town manufacturing
a different line of drill chucks from those of the plaintiff. After the
expiration of the patents under which the plaintiff had operated, the
defendant in 1902 and 1903 obtained a complete line of the plaintiff's
two types of chucks, the "Little Giant Improved," and the "Little
Giant Double Grip," took them apart, and used the parts for models
to reproduce chucks of the same appearance, and in doing so they hired
men who had learned their trade and been employed in the plaintiff's
factory and who knew the entire secrets of the plaintiff's business.
The chucks so manufactured by the defendant were really duplicates
of the plaintiff's chucks. They were stamped with figures and words
corresponding in size and style with those which had been employed
by the plaintiff for upwards of 10 years prior thereto. During that

10 years the plaintiff had manufactured and marketed six different sizes of the "Little Giant Improved" type of chucks with numbers beginning with the smaller and ending with the larger, "No. 00," "No. 0," "No. 1," "No. 2," "No. 3," "No. 4," and six different sizes of the "Little Giant Double Grip," type of chucks, with numbers beginning with the smaller and ending with the larger, "No. 0," "No. 1," "No. 2," "No. 2½," "No. 3," "No. 4," each of which chucks had stamped on its face its appropriate trade-name and number as aforesaid, which name and numbers were new when adopted by the plaintiff. Each also had stamped upon it numerals showing the year when it was manufactured, and showing the size of certain screws used, the words "keep well oiled," the name of the plaintiff as manufacturer, and the place of manufacture, "Oneida, N. Y." The plaintiff had advertised these chucks extensively in catalogues in the Spanish, German, French, and English languages, and they were widely and favorably known in the trade by the forms, sizes, finish, and the trade-names and numerals stamped thereon, and had also come to be known from the place of manufacture as "Oneida chucks." The referee found with reference to the chucks manufactured by the defendant, in addition to the facts stated, "that the said chucks appear so exactly like the plaintiff's chucks of the same type that it is difficult to distinguish between them, and the said chucks as placed upon the market are calculated to deceive intending purchasers of the plaintiff's goods, and are so constructed, stamped, and marked as to place in the power of dealers in the goods the ready means of deceiving purchasers, and in foreign lands where the plaintiff's goods have been and are being sold in large quantities there is no practicable means for purchasers to distinguish between the defendant's chucks and the plaintiff's chucks of this type especially in non-English speaking lands."

Beginning in 1902 the defendant printed and circulated various catalogues and folders and advertised in different trade journals, inserting therein cuts of the various types of chucks manufactured by the plaintiff, which cuts were copies of cuts the plaintiff had made and used in its various catalogues and other advertisements for a series of years. The referee also found:

"That the effect of the reproduction of the plaintiff's various types of chucks by the defendant in form, finish, and appearance alike with the various numerals and words used by the plaintiff stamped thereon, and the printing of the different catalogues and folders with the cuts copied from plaintiff's catalogues and advertisements, together with the expressions and language used by the defendant in these advertisements, was calculated to induce the belief that the defendant was the plaintiff's concern and was calculated to deceive and mislead the public, or that portion of it having use for goods of the character and quality manufactured by the plaintiff."

The referee further found that the acts of the defendant were done with the intent, with reference to the two types of chucks in controversy, to deceive the public and intending purchasers into believing that the chucks manufactured and sold by the defendant were the plaintiff's chucks, and was unfair and unlawful competition with the plaintiff, the effect of which was to injure the plaintiff's business and

to defraud the public and the plaintiff. The law on this class of cases seems to be reasonably well settled, and therefore it appears unnecessary to review the cases. Unfair competition is defined in 28 Am. & Eng. Enc. of Law (2d Ed.) p. 409, as "passing off or attempting to pass off upon the public the goods or business of one man as being the goods or business of another." It is there also further said:

"Any conduct tending to produce this effect constitutes unfair competition and may be enjoined. The means employed are wholly immaterial. * * * The general rule seems to be that infringement or unfair competition exists whenever the resemblance is so close that ordinary purchasers, buying with ordinary caution, are likely to be misled. The resemblance need not be sufficient to deceive experts or persons specially familiar with the trade-mark or goods involved, nor such as would deceive persons seeking the two trademarks or articles placed side by side. A similarity sufficient to make it likely that unwary purchasers will be deceived has been deemed sufficient. Id. pp. 410, 411. * * * Similarity in the main distinguishing features will usually be sufficient to constitute infringement or unfair competition. But a cumulation of resemblances or differences has also an important bearing in the determination of the question. Similarity in a great number of points may constitute unfair competition although in no one alone it would do so, and, although there may be differences in other points (Id. pp. 414, 415), where otherwise the similarity between the plaintiff's and the defendant's labels, marks, or dress of goods is sufficient to constitute infringement or unfair competition, the mere fact that the defendant has substituted his own name in place of the plaintiff's will not alone constitute a defense. That is not sufficient to destroy the effect of the imitation in other respects. A fortiori, it is not sufficient where it is so printed as probably not to attract observation. It is, however, a circumstance of difference to be considered in connection with all other points of similarity or difference. * * * It is immaterial that the retail dealer or immediate purchaser of the goods is not deceived or likely to be deceived as to the identity of the goods. Unfair competition is shown if the goods are so dressed out, marked, or labeled as to enable the retailer to deceive the ultimate purchaser and make it likely that such purchaser will be deceived. Id. pp. 423, 424."

The facts proven I think bring the case within the rules thus stated.

The question presented for determination on this branch of the case was whether the defendant has been guilty of unfair trade, and of knowingly putting into the hands of the retail dealer the means of deceiving the ultimate purchaser into the belief that he was receiving the plaintiff's chucks. The question under the authorities is not whether the defendant deceived the jobbers to whom the defendant sold its goods. The defendant insists that because its name was printed upon the chucks that the jobbers could not have been deceived, and that there was no proof of deception in these sales, but that is not the question involved. The question is not whether the jobbers were deceived, but whether the goods were so constructed as that they were calculated to deceive the ultimate purchaser. The question for decision was purely one of fact, and the conclusion reached by the referee seems to have ample support in the evidence and in the facts found by him, and I think we should not therefore interfere with it.

In respect to damages, the referee found in detail the number of the various kinds of chucks that were wrongfully manufactured and sold by the defendant in unlawful competition with the plaintiff; that the greater number of them were sold to persons who were at the time of

such sales and prior thereto plaintiff's customers, and that, if the defendant had not sold such chucks to the plaintiff's customers, the plaintiff could and would have manufactured and supplied to such customers substantially all the chucks so manufactured and sold to them by the defendant. The referee has based the damages allowed by him upon the net profits over all expenses which the plaintiff would have made had it manufactured and sold the various kinds of chucks and parts which were, in fact, made and sold by the defendant. In addition to that, he found that the defendant sold chucks to plaintiff's customers on more favorable terms of discount, the list prices of both parties being the same, than those which the plaintiff had previously given to its customers, and that, in order to meet this extra discount and to retain its trade with its customers, the plaintiff was compelled to meet the defendant's prices. The referee also computed and found the damages that the plaintiff had suffered by reason of this unlawful competition. He seems to have been within the authorities in thus fixing the damages sustained by the plaintiff. In Faber v. Hovey, 1 Week. Dig. 529, the General Term in the First Department held that the correct rule of damages is to award the plaintiff the profits which it could have made upon the manufacture and sale of the same quantity of goods manufactured and sold by the defendant. In 28 Am. & Eng. Enc. of Law (2d Ed.) p. 438, in discussing the question of damages in this class of cases, it is said:

"The plaintiff may also recover such actual damages to himself as he is able to prove by legal evidence. He is not limited to the profits made by the defendant. The rule is the same in cases of unfair competition as in cases of infringement of technical trade-marks."

In Williams v. Mitchell, 106 Fed. 168, 45 C. C. A. 265, the United States Circuit Court of Appeals in the Seventh Circuit held that in case of an invasion of plaintiff's rights by unfair competition he was entitled upon proper proof to compensation to the extent of the invasion. Damages occasioned by enforced reduction of plaintiff's prices are properly recovered in cases of this character. Sebastian on the Law of Trade-Marks (4th Ed.) pp. 233, 234.

I think the judgment and orders should be affirmed, with costs.

SEWELL, J., concurs.