NATHAN MFG. CO. v. H. A. ROGERS CO. et al.

(Supreme Court, Appellate Division, First Department.    February 11, 1909.)

TRADE-MARKS AND TRADE-NAMES (§ 3*)—RIGHTS ACQUIRED—INJUNCTION.

Plaintiff manufactured various styles of steam boiler injectors, in general construction based on an injector previously manufactured under a patent which had expired, adopting and applying to all the styles, from the beginning, the word "Monitor," never before used in such connection, so that its output became known to the public and was sold as "Monitor" injectors, which word was cast on all of them. One style was never protected by any patent. Some particular parts of other styles were covered by various patents obtained by plaintiff, none of which were fundamental. After expiration of plaintiff's patents, defendant sold injectors manufactured by another, identical with those of plaintiff, and with the word "Monitor" cast on them, but bearing a plate containing name and address of the manufacturer. *Held,* that the word "Monitor" in no sense described the patented article nor the patentee, but was an arbitrary, fanciful word, selected and used by plaintiff to designate the injectors manufactured by it, so that it obtained the right to use it, and was entitled to be protected in its use, besides which its use by defendant tended to deceive the public, so that injunction against such use of the word was proper.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. § 3.*]

Scott and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action by the Nathan Manufacturing Company against the H. A. Rogers Company and another. From a judgment for plaintiff on the decision of the court without a jury, said named defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and HOUGHTON, JJ.

David Leventritt, for appellant.
Samuel Untermyer, for respondent.

HOUGHTON, J. Since the year 1880 plaintiff and its predecessor have manufactured various styles of steam boiler injectors. In general construction these appliances were based on an injector which had been manufactured under a patent which had expired. From time to time plaintiff and its predecessors obtained letters patent respecting some particular part of various styles of injectors, none of which patents, however, were fundamental, and some of which after trial were abandoned. One style of nonlifting injector, known as "Class C," was never protected by any patent in any part, and another style never employed any of the patents appearing in the record. From the beginning of manufacture plaintiff and its predecessors adopted the word "Monitor," and applied that word to all the various styles of injectors which it put upon the market. The word "Monitor" had not been theretofore used by any manufacturer of boiler injectors, and plaintiff's output became known to the public and was sold as "Monitor" injectors, which word was cast upon them all.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

After all of plaintiff's patents had expired, the Edna Smelting & Refining Company, an Ohio corporation, began the manufacture and sale to the trade of an exact reproduction of certain styles of plaintiff's injectors, and cast on them, in exact imitation, the word "Monitor," and issued a catalogue respecting styles, taken bodily from the catalogue issued by plaintiff. The injectors manufactured by the Ohio company were not only painted like those of plaintiff, but were numbered in the same way, and so closely resembled plaintiff's that one of the defendant's own witnesses could not tell the photograph of the one from the other. There was placed, however, on those manufactured by the Ohio corporation a plate containing its name and address.

The appellant, H. A. Rogers Company, acted as sales agent for the Ohio company, and this action was brought against it and that company to restrain the use of the word "Monitor," and has resulted in a judgment to that effect. The Ohio corporation was not served, although named in the summons, and on its appeal certain portions of the judgment affecting it have been stricken out by this court in a decision made herewith. 114 N. Y. Supp. 1037.

The appellant attempts to justify the use of the word "Monitor" on injectors of the exact counterpart of those manufactured by the plaintiff on the ground that the plaintiff applied that word to designate and describe its patented injector which it began to manufacture under what is known as the "Wohlers Patent," and that the word "Monitor" in no sense indicated the source of manufacture, and hence could not become a trade-mark or designation which outlived the patent. On the other hand, the plaintiff insists that it acquired a valid common-law trade-mark in the name "Monitor" as applied to injectors, because it manufactured for a long number of years under that style various kinds of injectors, some covered by patents and others not, and that the Wohlers patent was in no sense fundamental, because it was limited to a minor device; and that, even if it has no trade-mark, the defendant was properly restrained because it was guilty of unfair competition.

We are of the opinion that the judgment was right and should be affirmed. The word "Monitor" in no sense described the patented article nor the patentee. It is an arbitrary, fanciful word which the plaintiff selected and used to designate the injectors manufactured by them, and which they could obtain the right to use. Waterman v. Shipman, 130 N. Y. 301, 29 N. E. 111.

It does not seem to us that Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, or Ludlow Valve Mfg. Co. v. Pittsburgh Mfg. Co. (U. S. Cir. Ct. App., 3d Cir., decided Nov. 19, 1908) 166 Fed. 26, or Westcott Chuck Co. v. Oneida Nat. Chuck Co., 122 App. Div. 260, 106 N. Y. Supp. 1016, compel any modification of the judgment. The distinctive feature of the Singer Case seems to be that the word "Singer" alone was not used when the manufacture of sewing machines was first begun. In the course of its opinion the court says:

"Irrespective of the patents and the designative significance of the word 'Singer' which arose during their life, the proof also clearly establishes that the word 'Singer' was adopted by I. M. Singer & Co., or the Singer Manufacturing Company, in their dealings with the general public, as designative

of their distinctive style of machines rather than as solely indicating the origin of manufacture. This is demonstrated by the fact that at the inception of the manufacture of the machines the word 'Singer' alone was not used on them."

In addition, the word "Singer" was not alone used until the patents were about expiring. In commenting on this fact, the court says:

"This coincidence between the expiration of the patents and the appearance of the trade-mark on the machines, and the use of the word 'Singer' alone, tends to create a strong implication that the company, with the knowledge that the patents which covered their machines were about to expire, substituted the trade-mark for the plain designation of the source of manufacture theretofore continuously used, and added the word 'Singer,' which had become the designation by which the public knew the machine, as a distinctive and separate mark, in order thereby to retain in the possession of the company the real fruits of the monopoly when that monopoly had passed away."

The opinion in the Ludlow Case is based on the assumption that the word "Ludlow" was a generic designation as applied to valves and hydrants of the type in question, and not a word pointing to the source of manufacture alone.

It would seem that the surname of the patentee applied to a device more naturally designated the type of the device and related to the device itself more clearly than to the manufacturer. A "Ludlow" valve or a "Singer" machine might be manufactured by an entirely different person than the patentee, and such designations would not show the source of manufacture, but would rather relate to the particular type of invention. The word "Monitor" is an artificial name as applied to a manufactured article, and, the plaintiff having by skill and expenditure of money become known as the manufacturer of "Monitor" injectors, such designation points to it as the manufacturer, and it is entitled to be protected in its use. If the plaintiff has any rights which can possibly be invaded, the Ohio company has invaded them, because it has clearly attempted to appropriate to itself whatever of value the plaintiff has in the exclusive use of the word "Monitor." Its use of that word also, manifestly, tends to deceive the public.

As we view the case, the judgment was right and should be affirmed. The judgment is affirmed, with costs.

PATTERSON, P. J., and McLAUGHLIN, J., concur.

SCOTT, J. (dissenting). I am unable to concur in the affirmance of this judgment, because I cannot find any substantial distinction between this case and the leading case of Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, which applied to a similar state of facts a rule which has been generally accepted by the courts, and, which if applied to the present case, requires a reversal of the judgment.

The appellant frankly admits that the injector which it sells is what is termed in the brief a "Chinese" copy of the injector manufactured and sold by the plaintiff. That appellant has a right to imitate and even copy plaintiff's machine is not questioned. What is questioned, and what the judgment appealed from denies to the appellant, is the right

to use the word "Monitor" upon the copies so made. The sole basis for the judgment is the right and duty of the court to restrain and prevent unfair competition in trade. It is apparent from the testimony that the use of the word "Monitor" as used by plaintiff was coincident, or very nearly so, with the acquisition of the so-called "Wohler's Patent," and that, although that patent may not have been fundamental, or such as protected every part of plaintiff's injector, yet that it did cover and protect one of its integral parts so that the injector could not have been copied without necessarily infringing that patent. What the Supreme Court of the United States characterizes as the "pivotal" questions of fact upon which it based its decision in the Singer Case were:

(1) "That the Singer sewing machines were covered by patents which gave to the manufacturers a substantial monopoly; that, in consequence of the enjoyment of this monopoly by the makers, the name 'Singer' came to indicate in its primary sense, to the public, the class of type of machines made by the Singer Company or corporation, and thus this name constituted their generic description; that, also, as this name applied to and described machines made alone by the Singer firm or corporation, the use also came in a secondary sense to convey to the public mind the machines made by the firm or corporation.

(2) "That the word 'Singer' was also voluntarily applied by the Singer firm or companies as a designation of the general type of machines made by them, with the intention that such machines should be accepted by the public under that name; thus the course of business and the purposes for which the name 'Singer' was used brought about results identical with those which sprang from the existence of the monopoly, hence that name became not only the description of the machines, but also, in a subordinate sense, the indication of the source of manufacture."

With the substitution of the word "Monitor" for "Singer," and "Injector" for "Sewing Machines," and "Nathan Manufacturing Company" for "Singer Firm and Companies," the clauses above quoted would, as I read the evidence, exactly state the pivotal facts upon which the present case turns. The Singer Company manufactured sewing machines adapted to various purposes, to which it added descriptive words to the generic word "Singer." In the same way the plaintiff has manufactured injectors of the same general type, but of slightly different pattern adapted to different uses, to indicate which it has added descriptive or distinguishing words to the generic word "Monitor." I find myself quite unable to follow the course of reasoning which leads to the conclusion that the use of an arbitrary word, such as "Monitor," points more surely to the source of manufacture than does the use of the surname of the individual who originally manufactured the article to which the name is applied. If there be any such distinction, it would seem that the name of the original manufacturer would be more likely to be understood as indicating the source of manufacture. It is not always easy to determine what is, and what is not, unfair competition. Our Court of Appeals has said that:

"The true test, we think, is whether the resemblance is such that it is calculated to deceive, and does, in fact, deceive, the ordinary buyer making his purchases under the ordinary conditions which prevail in the conduct of the particular traffic to which the controversy relates." Fischer v. Blank, 138 N. Y. 244–252, 33 N. E. 1040.

What was said in Westcott Chuck Co. v. Oneida Natl. Chuck Co., 122 App. Div. 260, 106 N. Y. Supp. 1016, is equally applicable to the present case:

"As to the method of stamping, it is somewhat difficult to see how, with the plaintiff's name stamped upon its product, and the defendant's name stamped upon the product sold by it, any confusion as to the source or origin of the respective products could arise in the mind of any purchaser who cared to inform himself as to that question. These chucks are used almost exclusively by machinists who have technical knowledge, and who look to the construction of the chuck rather than to its form or any particular marks thereupon. Such customers are much less likely to be misled by form than in ordinary cases where articles are purchased by those who buy for no mechanical purpose, or who have no special knowledge to enable them to discriminate between articles made by different makers."

In the Singer Case, and in Ludlow Valve Mfg. Co. v. Pittsburgh Mfg. Co. (U. S. Cir. Ct. App., decided November 1908) 166 Fed. 26, the defendants were permitted to manufacture and sell copies of the complainant's machines, provided the articles sold were so marked as to plainly and unmistakably indicate that they were made by the defendants. The injectors sold by appellants are so marked, and I do not understand that they are objected to on this score. I think, however, that the catalogue of separate parts going to make up the "Monitor" injector, as used and issued by appellant, does furnish, in the form in which it is printed, an instance of unfair competition, and was properly enjoined. In other respects I think that the judgment cannot be sustained, and should be reversed and a new trial granted.

LAUGHLIN, J., concurs.